**ORAL ARGUMENT HAS BEEN SCHEDULED FOR MAY 8, 2020**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

**No. 19-1155**

---

**UNITED STATES POSTAL SERVICE,**
***Petitioner,***
**v.**
**POSTAL REGULATORY COMMISSION,**
***Respondent,***
**ASSOCIATION FOR POSTAL COMMERCE,**
***Intervenor for Respondent.***

---

**ON PETITION FOR REVIEW OF AN ORDER OF**
**THE POSTAL REGULATORY COMMISSION**

---

# BRIEF OF INTERVENOR IN SUPPORT OF RESPONDENT


Matthew D. Field
Ian D. Volner
Venable LLP
600 Massachusetts Avenue, N.W.
Washington, D.C. 20001
(202) 344-8281

*Counsel for Association for Postal Commerce*


March 11, 2020

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

### A. Parties, Intervenors, and Amici

All parties appearing before this Court are listed in the Initial Brief of Petitioner.

**Rule 26.1 Disclosure Statement**

The Association for Postal Commerce ("PostCom") hereby files its Disclosure Statement pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Fed. R. App. P. 26.1.

PostCom is a membership organization comprised of direct marketing firms, printers, letter shops, suppliers, and others who use or support the use of mail for business communication and commerce. Members of PostCom are customers, competitors, or licensees of the Postal Service for both postal and nonpostal services and products that are the subject of the Commission order under review.

PostCom is organized under the laws of the District of Columbia, and has its principal place of business in Alexandria, Virginia. PostCom is not publicly traded and has no corporate parent. No publicly traded entity has an ownership interest in PostCom. PostCom is a trade association within the meaning of Circuit Rule 26.1(b).

## B. Orders Under Review

The Postal Service seeks review of Order No. 5151, Order Issuing Determination to Unseal Library Reference PRC-LR-ACR2018-NP3, dated July 12, 2019 in Docket No. ACR2018. Order No. 5151 appears in the Joint Appendix at pages 618 through 696.

## C. Related Cases

A reference to a similar case before the Court appears in the Initial Brief of the United States Postal Service.

## TABLE OF CONTENTS

**I. STATEMENT OF THE ISSUE ..... 1**

**II. STATUTES AND REGULATIONS ..... 1**

**III. STATEMENT OF THE CASE ..... 1**

**IV. SUMMARY OF ARGUMENT ..... 1**

**V. ARGUMENT ..... 3**

A. Standard of Review. ..... 3

B. The Commission Applied the Appropriate Standard When Evaluating Whether to Unseal the Library Reference ..... 3

1. The Postal Service's Novel Public Interest Standard Lacks Support in the Statute. ..... 3

**VI. CONCLUSION ..... 9**

## TABLE OF AUTHORITIES

**Page(s)**

**STATUTES AND REGULATIONS**


39 C.F.R. § 265.1(a)(3) ....................4

39 C.F.R. § 3004.2(b) ....................4

39 C.F.R. § 3007.300(b) ....................8

39 C.F.R. § 3007.302 ....................8

39 U.S.C. § 410(c) ....................4, 5

39 U.S.C. § 504(g)(3) ....................5

* 39 U.S.C. § 504(g)(3)(A) ....................1, 2, 3, 4, 5, 7, 9

39 U.S.C. § 3652(f)(1) ....................4

39 U.S.C. § 3653(a) ....................5, 6

39 U.S.C. § 3653(b)(1) ....................6

39 U.S.C. § 3653(c) ....................6


**Other Authorities**


Order No. 96, *Regulations to Establish Procedure for According Appropriate Confidentiality* ....................7


* Authorities upon which we chiefly rely are marked with an asterisk.

## GLOSSARY

| | |
|---|---|
| Commission | Postal Regulatory Commission |
| Postal Service | United States Postal Service |
| PostCom | Association for Postal Commerce |

## I. STATEMENT OF THE ISSUE

Whether the Postal Regulatory Commission ("Commission") appropriately identified and assessed the public interest in financial transparency when applying the balancing test set forth in 39 U.S.C. § 504(g)(3)(A).

## II. STATUTES AND REGULATIONS

Except for the regulations reproduced in the addendum to this brief, all applicable statutes and regulations are attached to Petitioner's Brief and Respondents' Brief.

## III. STATEMENT OF THE CASE

The Association for Postal Commerce ("PostCom") adopts the statement of the case set forth in the Commission's brief.

## IV. SUMMARY OF ARGUMENT

The Postal Regulatory Commission appropriately interpreted the balancing test set forth in 39 U.S.C. § 504(g)(3)(A) in determining whether to unseal Library Reference PRC-LR-ACR2018-NP3. In Order No. 5151, the Commission explained that the appropriate degree of confidentiality provided to United States Postal Service ("Postal Service") submissions is determined by applying 39 U.S.C. § 504(g)(3)(A), which directs the Commission to "balance the nature and extent of the likely commercial injury to the Postal Service against the public interest in maintaining the financial transparency of a government establishment competing in commercial markets." JA645 (quoting 39 U.S.C. § 504(g)(3)(A)).

Contrary to the Postal Service's contentions, the "public interest in maintaining the financial transparency of a government establishment competing in commercial markets" goes far beyond "protecting against competitive abuse of a statutory monopoly or of some other incident of governmental status." USPS Br. at 20. Rather, the "public interest" at issue includes the Commission's ability to obtain public feedback necessary to inform its oversight duties with respect to the Postal Service. Section 504(g)(3)(A) therefore recognizes that while it may be appropriate for the Postal Service to treat certain information as non-public when performing its day-to-day duties, the Commission may need to publicly reveal this information in the furtherance of its duties under Title 39, including evaluating and ensuring the compliance of the Postal Service's rates and fees with statutory and regulatory requirements through the annual compliance review process.

Public comment plays a vital role in the Commission's regulatory processes. The "public interest in the financial transparency of a government establishment competing in commercial markets" includes both a general interest in ensuring the public has access to information about the Postal Service's finances and an interest in gathering public comment on the Postal Service's activities and finances to evaluate compliance with statutory requirements. These interests, of course, must be weighed against the commercial harm the Postal Service would suffer if the information in question is publicly revealed. In evaluating whether to unseal Library

Reference PRC-LR-ACR2018-NP3, the Commission weighed these considerations. Therefore, it properly applied the test established by 39 U.S.C. § 504(g)(3)(A).

# V. ARGUMENT

## A. Standard of Review.

The standard of review is set forth in Respondents' Brief.

## B. The Commission Applied the Appropriate Standard When Evaluating Whether to Unseal the Library Reference

### 1. The Postal Service's Novel Public Interest Standard Lacks Support in the Statute.

When determining whether to publicly release information the Postal Service has designated confidential, "the Commission shall balance the nature and extent of the likely commercial injury to the Postal Service against the public interest in maintaining the financial transparency of a government establishment competing in commercial markets." 39 U.S.C. § 504(g)(3)(A). The Postal Service contends that the "public interest in maintaining the financial transparency of a government establishment competing in commercial markets" is limited to concerns "such as protecting against competitive abuse of a statutory monopoly or of some other incident of governmental status." USPS Br. at 20. It does not, according the Postal Service, encompass "a broad 'public interest' in informed policy discussion or financial transparency *per se*." *Id.* at 19. The Postal Service's narrow definition of "public interest" is not supported by the text or structure of the statute.

First, even if this language did limit financial transparency concerns to those "specific to a government establishment competing in commercial markets," such concerns would not be limited to "protecting against competitive abuse of a statutory monopoly or of some other incident of governmental status." USPS Br. at 19-20. The key feature of a "government establishment competing in commercial markets" is that it is a "government establishment." As such, there is a presumption that its records should be open to the public. *See, e.g.*, 39 C.F.R. § 265.1(a)(3) ("It is the policy of the Postal Service to make its official records available to the public to the maximum extent consistent with the public interest."); 39 C.F.R. § 3004.2(b) ("It is the stated policy of the Commission that [Freedom of Information Act] requests shall be administered with a clear presumption of openness.").

The statutory scheme at issue here provides discrete exemptions to the presumption of openness. Section 410(c), in recognition of the quasi-commercial function performed by the Postal Service, allows the Postal Service to designate materials as confidential that other government agencies might not. 39 U.S.C. § 410(c). Section 3652(f)(1) directs the Postal Service to notify the Commission that information it is submitting in connection with its annual compliance report has been designated as confidential under section 410(c). 39 U.S.C. § 3652(f)(1). But section 504(g)(3)(A) specifically states that the protection afforded by these provisions "shall not prohibit the Commission from publicly disclosing relevant

information in furtherance of its duties" under Title 39. 39 U.S.C. § 504(g)(3)(A). Thus, section 504(g)(3) recognizes that while it may be appropriate for the Postal Service to treat certain information as confidential in the course of its day-to-day activities, it may not be appropriate to protect that information from disclosure in the regulatory process.

In this connection, it is important to consider the Commission's "duties under this title" referenced in § 504(g)(3)(A). These duties involve broad oversight of the Postal Service that extends far beyond "protecting against competitive abuse of a statutory monopoly or of some other incident of governmental status." The obvious purpose of section 504(g)(3)(A) is to ensure that Postal Service claims of confidentiality, particularly those made under the broad § 410(c) standard of "information of a commercial nature . . . which under good business practice would not be publicly disclosed," do not inhibit the Commission from carrying out these duties. 39 U.S.C. § 410(c). Accordingly, the "public interest in maintaining the financial transparency of a government establishment competing in commercial markets" must be interpreted in light of the "duties under" Title 39 that section 504(g)(3)(A) is designed to support.

One of these duties is described in 39 U.S.C. § 3653(a), which requires the Commission to "promptly provide an opportunity for comment" on the Postal Service's annual compliance report "by users of the mails" and "affected parties."

39 U.S.C. § 3653(a). The Commission uses this public input to inform its determination of whether the Postal Service's rates or fees are in compliance with the statute and Commission regulations under 39 U.S.C. § 3653(b)(1). This evaluation is not limited to whether the Postal Service is engaged in competitive abuse of a statutory monopoly or otherwise taking advantage of its governmental status. Rather, as demonstrated in the report issued for FY2018 (JA305-561), it is a comprehensive evaluation of the Postal Service's rates, fees, workshare discounts, and service performance covering both market-dominant and competitive products. Importantly, where non-compliance is found, the Commission is empowered to "take appropriate action . . . as if a complaint averring such noncompliance had been duly filed and found . . . to be justified." 39 U.S.C. § 3653(c).

An interpretation of "the public interest in maintaining the financial transparency of a government establishment competing in commercial markets" that limits the public interest to "protecting against competitive abuse of a statutory monopoly or of some other incident of governmental status" would frustrate the Commission's ability to perform its duties under section 3653. As PostCom explained in its motion seeking access to the materials at issue, even though it sought to comment primarily on market-dominant product issues, "in some cases it is necessary – or at least preferable – to draw comparisons with other products when

commenting on [Postal Service] performance with regard to efficiency and/or cost containment efforts." JA157.

PostCom further explained in response to the Postal Service's attempt to limit its access to these materials even under protective conditions (*see* JA167-78) that the Commission's rules allow access to confidential materials under protective conditions "to allow interested parties to meaningfully participate in Commission proceedings while still protecting the Postal Service from competitive harm." JA197. The use of protective conditions reflects the balancing test of 39 U.S.C. § 504(g)(3)(A) and recognizes that the risk of commercial harm to the Postal Service may, at times, warrant restrictions on access to certain materials. But the use of protective conditions also recognizes the broad public interest in ensuring meaningful public participation to assist the Commission in performing its duties. As the Commission has explained, "The [Postal Accountability and Enhancement Act] relies on public transparency, in addition to regulation, to achieve its goal of Postal Service accountability." Order No. 96, *Regulations to Establish Procedure for According Appropriate Confidentiality*, Docket No. RM2008-1, at 5 (Aug. 13, 2008); *see also* JA197.

Protective conditions nevertheless inhibit the ability of organizations such as PostCom to meaningfully participate in Commission dockets because they limit an organization's ability to share information with its members, receive feedback, and

develop informed comment. *See* 39 C.F.R. §§ 3007.300(b) (preventing access to non-public materials by those involved in competitive decision-making) and 3007.302 (prohibiting dissemination of non-public materials); JA244 (granting PostCom representatives access to material where they agreed to "comply with the Commission's strict protective conditions in order to gain access to non-public, commercially sensitive materials"). They also prevent the Commission from receiving feedback from a broad cross-section of the public, as interested parties must specifically request access and agree to abide by the protective conditions. Thus, if protective conditions are established unnecessarily, they may prevent the Commission from receiving the public feedback it needs to perform its duties, thus undermining the public interest in the financial transparency of the Postal Service.

In the present case, the Commission recognized that the data in the library reference at issue "identify particular aspects of the terminal dues system that are responsible for most of the negative contribution associated with the Inbound Letter Post product." JA654. It further noted that "the analysis and data provide interested persons useful information when commenting on the compliance of Postal Service products or commenting on changes to the terminal dues system." *Id*. In other words, the information in question would promote the public interest by assisting the Commission in performing its oversight duties and ensuring the financial transparency of the Postal Service. Accordingly, the Commission determined that

protective conditions were unnecessary because the "public has a legitimate interest in the information in question" that is not outweighed by "unsupported allegations of commercial harm." JA689. In doing so, it applied the balancing test of 39 U.S.C. § 504(g)(3)(A) precisely as Congress intended.

## VI. CONCLUSION

For the foregoing reasons, PostCom hereby requests that the Court reject the Postal Service's challenge to Order No. 5151 to the extent that challenge relies on the Postal Service's limitation of "the public interest in maintaining the financial transparency of a government establishment competing in commercial markets" to "protecting against competitive abuse of a statutory monopoly or of some other incident of governmental status."

Respectfully submitted,

*/s/ Matthew D. Field*
Matthew D. Field
Ian D. Volner
Venable LLP
600 Massachusetts Avenue, N.W.
Washington, D.C. 20001
(202) 344-8281

*Counsel for Association for Postal Commerce*

March 11, 2020

## CERTIFICATE OF COMPLIANCE

1. This brief complies with Circuit Rule 32(e)(2) because it contains 1,869 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Circuit Rule 32(e)(1).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word and 14-point Times New Roman.

*/s Matthew D. Field*
Matthew D. Field

Dated: March 11, 2020

**CERTIFICATE OF SERVICE**

Pursuant to Rule 25 of the Federal Rules of Appellate Procedure, I hereby certify that I have this 11th day of March, 2020, served a copy of the foregoing document electronically through the Court's CM/ECF system on all registered counsel.

*/s/ Karen C. Zwanzig*
Karen C. Zwanzig

# ADDENDUM

## TABLE OF CONTENTS

39 C.F.R. § 265.1 ........................................ A1

39 C.F.R. § 3004.2 ........................................ A2

39 C.F.R. § 3007.300 ........................................ A2

39 C.F.R. § 3007.302 ........................................ A2

**39 C.F.R. § 265.1**

**§ 265.1 General provisions**

. . .

(a) Policy.

(1) This subpart contains the regulations that implement the Freedom of Information Act (FOIA), 5 U.S.C. 552, insofar as the Act applies to the Postal Service. These rules should be read in conjunction with the text of the FOIA and the Uniform Freedom of Information Act Fee Schedule and Guidelines published by the Office of Management and Budget (OMB Guidelines). The Postal Service FOIA Requester's Guide, an easy-to-read guide for making Postal Service FOIA requests, is available at http://about.usps.com/who-we-are/foia/welcome.htm.

(2) Requests made by individuals for records about themselves under the Privacy Act of 1974, 5 U.S.C. 552a, are processed under part 266 of this chapter as well as under this subpart.

(3) It is the policy of the Postal Service to make its official records available to the public to the maximum extent consistent with the public interest. This policy requires a practice of full disclosure of those records that are covered by the requirements of the FOIA, subject only to the specific exemptions required or authorized by law. The exemptions from mandatory disclosure for various types of records provided by 5 U.S.C. 552(b) and 39 U.S.C. 410(c) reflect the fact that under some circumstances, the public interest may be better served by leaving the disclosure of particular records to the discretion of the Postal Service rather than by requiring their disclosure. This Postal Service policy does not create any right enforceable in court.

(4) Nothing in this subpart shall be construed to entitle any person, as of right, to any service or to the disclosure of any record to which such person is not entitled under the FOIA.

. . .

**39 C.F.R. § 3004.2**

**§ 3004.2 Presumption of openness**

. . .

(b) It is the stated policy of the Commission that FOIA requests shall be administered with a clear presumption of openness. The Commission will only withhold information if it reasonably foresees that disclosure would harm an interest protected by a FOIA exemption, as enumerated in § 3004.11, or disclosure is otherwise prohibited by law.

**39 C.F.R. § 3007.300**

**§ 3007.300 Eligibility for access to non-public materials**

. . .

(b) No person involved in competitive decision-making for any individual or entity that might gain competitive advantage from using non-public materials shall be granted access to non-public materials. Involved in competitive decision-making includes consulting on marketing or advertising strategies, pricing, product research and development, product design, or the competitive structuring and composition of bids, offers or proposals. It does not include rendering legal advice or performing other services that are not directly in furtherance of activities in competition with an individual or entity having a proprietary interest in the protected material.

. . .

**39 C.F.R. § 3007.302**

**§ 3007.302 Non-dissemination, use, and care of non-public materials**

(a) No person who has been granted access to non-public materials in accordance with § 3007.300 or § 3007.301 may disseminate the materials or the information contained therein, in whole or in part, to any person not allowed access pursuant to § 3007.300 or § 3007.301.

(b) Persons with access to non-public materials under § 3007.300 or § 3007.301 shall use non-public materials only for the purposes for which the non-public materials are supplied.

(c) Persons with access to non-public materials under § 3007.300 or § 3007.301 shall protect the non-public materials from any person not granted access under § 3007.300 or § 3007.301 by using the same degree of care, but no less than a reasonable degree of care, to prevent the unauthorized disclosure of these materials as those persons, in the ordinary course of business, would be expected to use to protect their own proprietary material or trade secrets and other internal, confidential, commercially sensitive, and privileged information.